UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

Yamaha Motor Corp., U.S.A.,          :
    Plaintiff,                        :
                                      :
v.                                    : Case No. 3:06cv00637 (JBA)
                                      :
Robert J. Ferrarotti, individually,   :
Fairview Farm Golf Course, LLC,       :
and Stonybrook Golf Course            :
    Defendants.                       :

**RULING ON YAMAHA'S MOTION TO DISMISS COUNTERCLAIMS FOR FAILURE TO JOIN NECESSARY PARTIES [DOC. # 21]**

Plaintiff Yamaha Motor Corporation, U.S.A. ("YMUS") brought this action against defendants Robert J. Ferrarotti, Fairview Farm Golf Course, LLC ("Fairview"), and Stonybrook Golf Course ("Stonybrook"), collectively "Golf Courses," claiming breach of contract by Fairview and Stonybrook resulting from their alleged default and anticipatory repudiation of two lease agreements related to YMUS' lease of golf cars to Fairview and Stonybrook. See Compl. [Doc. # 1]. YMUS maintains that Fairview and Stonybrook breached these contracts when Ferrarotti, owner of Fairview and Stonybrook, allegedly terminated the leases with YMUS. See id.

In their Answer, defendants assert the affirmative defenses of failure of consideration, fraud and misrepresentation, and unconscionability. See Ans. at 6-8 [Doc. # 13]. They also assert counterclaims of misrepresentation, fraud in the inducement, breach of the implied covenant of good faith and fair dealing, unconscionability, revocation of acceptance under the

Uniform Commercial Code ("UCC"), breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, and unfair or deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a et seq. See Countercl. at 11-20. The counterclaims are grounded in the allegation that the leased golf cars were nonconforming due to manufacturing defects and/or inherent mechanical or other design flaws. Golf Courses also maintain that YMUS and Venture Vehicles Turf Products Corp. ("Venture") as an agent for YMUS induced Fairview and Stonybrook to enter into adhesion contracts by misrepresenting the lease terms and the suitability of the leased golf cars. See Ans. at 7-8.

YMUS seeks dismissal of Golf Courses' counterclaims pursuant to Fed. R. Civ. P. 12(b)(7) and 19(a) for failure to join Venture and Yamaha Golf Car Company ("YGC") as necessary parties. Pl. Mot. to Dismiss at 1 [Doc. # 21]. For the reasons that follow, YMUS' Motion to Dismiss Golf Courses' counterclaims will be denied.

**I.  Factual and Procedural Background**

Defendants assert that in summer 2002, Robert Polish of Venture contacted Ferrarotti, who is authorized to enter into agreements on behalf of Fairview and Stonybrook, proposing to replace the existing golf car fleets at Fairview and Stonybrook

with new Yamaha golf cars. Countercl. ¶ 7. They allege that Polish represented that Venture would maintain the golf cars for the duration of the lease at no extra cost, and that "[t]his was a material inducement to Fairview's and Stonybrook's acceptance of the [proposed] lease terms . . . ." Countercl. ¶ 8. Golf Courses claim that Ferrarotti was unaware that "Venture Vehicles was acting as an undisclosed agent of YMUS, and at no time during the [lease] negotiations did Venture Vehicles disclose its principal." Countercl. ¶ 12. Golf Courses also allege that Polish failed to disclose that Fairview and Stonybrook would actually be leasing the golf cars from YMUS rather than Venture. Countercl. ¶ 13.

Around August 26, 2002, Fairview entered into Master Lease No. '30 with YMUS to lease seventy-six (76) electric 2003 Yamaha golf cars from YMUS and Stonybrook entered into Master Lease No. '31 with YMUS to lease thirty (30) gas 2003 Yamaha golf cars from YMUS. Although both lease agreements indicate YMUS as lessor, see Lease No. '30, Compl. Ex. A; Lease No. '31, Compl. Ex. B, Golf Courses maintain that, "with respect to discussions about, and the executon of, the Master Leases, Mr. Ferrarotti had no direct contact with YMUS." Countercl. ¶ 13

As part of the lease agreements, Fairview and Stonybrook were each required to, at their "sole expense, enter into a[n] Equipment Servicing Agreement with the manufacturer of the

3

Equipment or such other party . . . acceptable to Lessor . . . " for all service and repairs to the leased golf cars. Lease No. '30 § 7.1, Compl. Ex. A; Lease No. '31 § 7.1, Compl. Ex. B. Fairview and Stonybrook each entered into a Service and Maintenance Agreement with Venture. Fairview Maint. Agrm't, Compl. Ex. C; Stonybrook Maint. Agrm't, Compl. Ex. D.

Around November 1, 2002, YMUS delivered the leased golf cars to Fairview and Stonybrook. Ferrarotti executed two Certificates of Acceptance on behalf of Fairview and Stonybrook, repsectively. Fairview Cert., Compl. Ex. E; Stonybrook Cert., Compl. Ex. F. Golf Courses claim that they began experiencing mechanical and electrical problems with the golf cars "[a]lmost immediately after delivery . . . ." Countercl. ¶ 14. Golf Courses allege that in 2003, the golf cars' first season of use, "Venture Vehicles performed no fewer than 22 steering system repairs and 4 forward/reverse switch replacements." Id. ¶ 15. In 2004, the golf cars' second season of use, "Venture Vehicles performed no fewer than 40 electrical system repairs and 35 steering system repairs." Id. Golf Courses also allege that Venture's inability to repair the golf cars "was due to the manner in which the golf cars were manufactured, . . . inherent mechanical or other design flaws, or . . . its own incompetence." First Affirm. Defense, Ans. at 6. Defendants claim that YMUS was negligent in approving Venture to perform all service and maintenance on the golf cars

because "Venture Vehicles was incapable of repairing the golf cars and keeping them in good working condition." Id.

In a letter dated February 25, 2005, Fairview and Stonybrook were informed that YGC had assumed Venture's responsibilities for the service and maintenance of the golf cars. Golf Courses allege that the steering and electrical problems continued, and during the first two months of the golf cars' third season, 2005, "approximately 10 steering system repairs and no fewer than 15 electrical system repairs" were required. Countercl. ¶ 19. Golf Courses claim that they performed many additional steering and electrical repairs themselves because "Yamaha Golf-Car Company [YGC] failed, refused or neglected to perform the repair[s]." Id.

YMUS alleges that Ferrarotti, by letters to YMUS dated July 4, 2005, July 19, 2005, and August 3, 2005, terminated the lease agreements with YMUS and requested that the golf cars be removed from the Fairview and Stonybrook premises, thereby anticipatorily repudiating the lease agreements. Compl. ¶ 20. YMUS took possession of the golf cars and sold 104 (all except two) at a private auction in August 2005 for $168,220. Id. ¶¶ 25, 26.

On April 25, 2006, YMUS instituted the present action against Golf Courses alleging breach of the lease agreements. The Complaint claims that, after application of auction proceeds to the outstanding debts due under the leases, there still exists

5

a deficiency to Fairview and Stonybrook for which Ferrarotti is personally liable.  Id. ¶¶ 27, 28, 29.

YMUS now moves to dismiss Golf Courses' counterclaims for failure to join Venture and YGC as necessary parties on the theory that Golf Courses were in fact asserting their counterclaims against Venture and YGC.  See Pl. Mot. to Dismiss. YMUS maintains that, because the counterclaims involve agreements between Golf Courses and Venture, and because Venture's responsibilities under these agreements were later assumed by YGC, each of which are separate and distinct corporate entities, Venture and YGC are necessary parties that should be joined under Rule 19.  See id. at 1-2.  Additionally, YMUS also identifies Yamaha Motors Manufacturing Company ("YMMC"), a Georgia corporation that manufactured the subject golf cars, as a necessary party that should be joined under Rule 19(a).[1]  See Pl. Reply Br. [Doc. # 24].

Golf Courses maintain that their counterclaims against YMUS assert no claims against Venture or YGC, that they seek no relief from either entity, that neither entity has claimed any interest

---

[1] On October 11, 2006, YMUS filed its reply brief raising for the first time the argument that YMMC is also a necessary party under Rule 19(a).  See Pl. Reply Br. at 1 [Doc. # 24].  Although Local Rule 7(d) dictates that reply briefs be "strictly confined to a discussion of matters raised by the responsive brief," D. Conn. L.Civ.R. 7(d), because the analysis to determine whether YMMC is a necessary party mirrors that with respect to Venture and YGC, the Court need not determine the propriety of addressing YMUS' late-raised claim.

6

in the subject matter of this action, and, therefore, that neither entity is "necessary" pursuant to Rule 19. See Defs.' Mem. in Opp. at 2 [Doc. # 23].

## II. Standard

Rule 19 governs joinder of persons needed for just adjudication:

> A person who is subject to service of process and whose joinder will not deprive the court of jurisdiction over the subject matter of the action shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a).

In reviewing a motion to dismiss brought pursuant to Rule 19, the Court determines whether an absent party is "necessary" under Rule 19(a) as a threshold requirement before undertaking a Rule 19(b) analysis as to whether that party is also "indispensable" such that dismissal would be required in its absence. "A party cannot be indispensable unless it is a 'necessary party' under Rule 19(a)." Jonesfilm v. Lion Gate Int'l, 299 F.3d 134, 139 (2d Cir. 2002).

## III. Discussion

### A.  Rule 19(a)(1)

Golf Courses maintain that, although "Venture and [YGC] were acting as the agents of YMUS, and that YMUS is therefore liable to Golf Courses, there is no direct claim asserted against either Venture or [YGC] in any of the counterclaims."  Defs.' Mem. in Opp. at 5.  Nor do Golf Courses' counterclaims directly implicate YMCC.  "A party is necessary under Rule 19(a)(1) only if in that party's absence 'complete relief cannot be accorded among those already parties.'"  MasterCard Int'l Inc. v. Visa Int'l Service Ass'n, Inc., 471 F.3d 377, 385 (2d Cir. 2006) (emphasis added).  Complete relief, Golf Courses claim, can be accorded between Golf Courses and YMUS without bringing in any of these non-parties.  In MasterCard, non-party Visa was not a "necessary party" because plaintiff could obtain complete relief *as to* the existing defendant without Visa's presence, even though further litigation between Visa and third party Fédération Internationale de Football Association ("FIFA") was an inevitability);  see also Peregrine Myanmar Ltd. v. Segal, 89 F.3d 41, 49 (2d Cir. 1996) (holding that non-party Ministry was not a necessary party because "the scope of relief provided by the district court (which the plaintiffs consider 'complete,' . . .) remains the same regardless of any initiative or position [non-party] Ministry may take").

Resolution of the issue of whether Venture was acting as an agent of YMUS may determine YMUS' liability, but it does not affect the consideration of whether it is "necessary" under Rule 19(a). As either agent or joint tortfeasor, Venture is not required to be joined under Rule 19. See Nottingham v. Gen. Am. Commc'ns Corp., 811 F.2d 873, 880 (5th Cir. 1987) ("[I]t is well-established that Rule 19 does not require the joinder of joint tortfeasors . . . . [n]or does it require joinder of principal and agent.").

**B. Rule 19(a)(2)**

YMUS argues pursuant to Rule 19(a)(2)[2] that failure to join Venture and YGC would subject it to multiple lawsuits and possibly inconsistent judgments because, "[s]hould the court find for defendants on any claim, YMUS would be forced to seek contribution or indemnification from YGC and/or Venture," against the principle of judicial economy. Pl. Mem. in Supp. at 6. Additionally, YMUS claims that "a failure to join in this action

---

[2] Rule 19(a)(2) states that a person shall be joined in the action if

> the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a)(2).

9

could also lead to an inconsistent result if a jury were to find a defect, breach of warranty, and/or inadequate repair [with regard to the golf cars] in this case but not in the subsequent litigation." Id. at 6.

Golf Courses respond that any possible claim by YMUS against Venture or YGC for indemnification or contribution does not render the absent parties "necessary" because such claims do not expose YMUS to a risk of multiple or inconsistent obligations. Defs. Mem. in Opp. at 9. Further, failure to join Venture or YGC will not render YMUS subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations as anticipated by Rule 19(a)(2)(ii).

The pleadings demonstrate that the counterclaims focus on the lease agreements between YMUS and Fairview and Stonybrook, and their performance or lack thereof under those contracts. None of the absent parties Venture, YGC, or YMCC were parties to these lease agreements, nor have any of them claimed an interest

relating to the subject matter of this action.[3]  Failure to join Venture, YGC, or YMMC thus will not impair or impede these absent parties from protecting their potential interests as anticipated by Rule 19(a)(2)(i) because

> [i]t is not enough under Rule 19(a)(2)(i) for a third party to have an interest, even a very strong interest, in the litigation.  Nor is it enough for a third party to be adversely affected by the outcome of the litigation.  Rather, necessary parties under Rule 19(a)(2)(i) are only those parties whose ability to protect their interests would be impaired <u>because of</u> that party's absence from the litigation.

MasterCard Int'l, 471 F.3d at 387 (emphasis in original).  YMUS argues that "[a] finding of negligence, breach of warranty, and/or defect could irreparably prejudice the non-joined parties, especially in the eyes of potential and existing customers in the rather specialized golf car industry."  Pl. Mem. in Supp. at 7.  However, any such "interest" of Venture, YGC, or YMMC is separate and distinct from the subject matter of the counterclaims in this

---

[3] Golf Courses also argue, under Rule 19(a)(2), that an absent party who does not actually claim an interest in the subject matter of the action cannot be considered "necessary." See Defs.' Mem. in Opp. at 6-7.  However, "courts generally construe 'claims an interest' as though it read 'has an interest' . . . . [s]ince an absentee obviously cannot make 'claims' in the action itself . . . ."  Jean F. Rydstrom, Annotation, <u>Who Must be Joined in Action as Person "Needed for Just Adjudication" Under Rule 19(a), Federal Rules of Civil Procedure</u>, 22 A.L.R. Fed. 765, § 8 (1975).  Nevertheless, this Court need not decide whether an absent party's failure to claim an interest, in and of itself, impacts consideration of whether that party is "necessary," because, as set forth below, YMUS has failed to demonstrate that any absent parties in this case meet the requirements of either Rule 19(a)(2)(i) or (ii) to be considered "necessary" parties.

11

case: the conduct of YMUS vis-a-vis Golf Courses in connection with the lease agreements on which YMUS sues.

Although YMUS foresees the potential for future litigation, should it seek contribution or indemnification from non-parties, YMUS has failed to identify any multiple or inconsistent obligations it could incur.[4] A critical element of Rule 19(a)(2)(ii) is that

> the substantial risk of inconsistent obligations must be <u>caused by</u> the nonparty's absence . . . (defining necessary party as one with an interest related to the action who "is so situated that the disposition of the action *in the person's absence* may . . . leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest").

MasterCard Int'l, 471 F.3d at 388 (quoting Fed. R. Civ. P. 19(a)(2)) (emphasis in original).

YMUS argues that Golf Courses' counterclaims expand the nature of the dispute beyond the claims in the Complaint, which were "narrowly tailored to the breach of contract under the relevant lease agreements . . .[,] to involve the interests of

---

[4]

"Inconsistent obligations" are not . . . the same as inconsistent adjudications or results . . . . Inconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident . . . Inconsistent adjudications or results, by contrast, occur when a defendant successfully defends a claim in one forum, yet loses on another claim arising from the same incident in another forum.

Delgado v. Plaza Las Americas, Inc., 139 F.3d 1, 3 (1st Cir. 1998).

third parties not yet joined . . . . [and, therefore,] defendants are the proper party to join these third parties . . . ." Pl. Mem. in Supp. at 2. YMUS' argument is unpersuasive because Golf Courses' counterclaims arise out of the circumstances of the formation and performance of the lease agreements between YMUS and Fairview and Stonybrook.

YMUS' final argument that the absent parties should be deemed "necessary" based on principles of judicial economy and "practical and pragmatic considerations" is also unpersuasive. Pl. Reply Br. at 2. Despite the significance of such considerations, they alone cannot support a determination that the absent parties in this case are "necessary," particularly in light of MasterCard Int'l. Just as "FIFA and Visa will litigate *their* dispute under their contract later on down the road if MasterCard prevails . . . ," MasterCard Int'l, 471 F.3d at 388 (emphasis in original), depending on the outcome of this case, YMUS can also litigate any dispute it may have with any of the absent parties in this case at a later time.

### VII. Conclusion

YMUS does not meet the threshold requirements under Rule 19(a) to show that Venture, YGC, or YMMC is a "necessary" party. Complete relief can be granted to Golf Courses in their counterclaims against YMUS in the absence of these non-parties. None of the absent non-parties have claimed any interest relating

13

to the subject matter of this action and there is no showing that failure to join these non-parties will impair or impede them from protecting their potential interests as anticipated by Rule 19(a)(2)(i). Finally, failure to join Venture, YGC, or YMMC will not render YMUS subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations as anticipated by Rule 19(a)(2)(ii). Because the threshold requirements of Rule 19(a) have not been met, inquiry on whether the parties would be considered "indispensable" under Rule 19(b) is not required.

For the foregoing reasons, YMUS' Motion to Dismiss Golf Courses' Counterclaims [Doc. # 21] is DENIED.

IT IS SO ORDERED

/s/

Janet Bond Arterton
United States District Judge

**Dated at New Haven, Connecticut this 1st day of May, 2007.**